51 CCPA

**Application of Maurice SOULAL.**

**Patent Appeal No. 7151.**

United States Court of Customs and Patent Appeals.

March 12, 1964.

Rehearing Denied May 8, 1964.

Albert L. Jacobs, New York City, James W. Dent, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 10, 12 and 17 of appellant's application serial No. 715,498, filed February 16, 1958 for "Production of N–Substituted 2–Hydroxymethyl Pyrrolidines." No claim has been allowed.

The appealed claims read:

"10. A process for the preparation of N–methylprolinol which comprises reacting 2:5–dibromoamyl acetate with methylamine."

"12. A process for the preparation of N–substituted prolinols which comprises reacting a carboxylic acid ester, whereof the carboxylic acid is selected from the group consisting of alkyl carboxylic acids having 1 to 6 carbon atoms in the alkyl group and aryl carboxylic acids, of a 2:5–dihalogeno-amyl alcohol of the general formula:

$$X\text{--}CH_2\text{--}CH_2\text{--}CH_2\text{--}CH\text{--}CH_2\text{--}OH$$
$$|$$
$$X$$

in which X is a halogen having an atomic weight greater than 30 and less than 90, with an alkylamine in which the alkyl group contains from 1 to 4 carbon atoms inclusive, selected from the group consisting of primary alkylamines and hydroxy alkylamines, to produce a mixture of N–substituted prolinols and an isomeric N–substituted–3–hydroxy–piperidine."

"17. A process for the preparation of N–substituted prolinols which comprises reacting a carboxylic acid ester of a 2:5–dihalogeno-amyl alcohol of the general formula:

$$X\text{--}CH_2CH_2CH_2\text{--}CH\text{--}CH_2.COOR^1$$
$$|$$
$$X$$

in which X is a halogen selected from the group consisting of chlorine and bromine and R is selected from the group consisting of alkyl having 1 to 6 carbon atoms and aryl with a 1 to 4 carbon atom alkylamine selected from the group consisting of primary alkylamines and hydroxy alkylamines."

Appellant's application describes the production of N–substituted 2–hydroxymethyl pyrrolidines, referred to as N–substituted prolinols, and N–substituted–3–hydroxy–piperidines. The prolinols and piperidines produced by appellant's process have the structural formulae:

N–substituted prolinols

N–substituted–3–hydroxy–
piperidines

wherein R′ is an alkyl or hydroxyalkyl radical containing from one to four carbon atoms.

Appellant's process comprises reacting a 1,4–halo compound with a primary alkylamine or a hydroxyalkyl amine. Ap-

---

1. The examiner has called attention to an error in claim 17 as to the terminal "CH₂.COOR" in the formula set forth therein. As the board has stated, apparently that terminal grouping should be CH₂.OOCR. We agree with the board and will so read the claim.

pellant in his application states that the process "usually provides, in addition to the desired N–substituted prolinol, a quantity of an isomeric N–substituted–3–hydroxy–piperidine which can be separated from the N–substituted prolinol by fractional distillation." No contention has been made that the N–substituted prolinols produced are new, appellant stating that his invention resides "only in the production of N–substituted prolinols by a new, economical and efficient process."

The reference relied on is:

French Patent 1,000,310 Oct. 10, 1951

The French patent discloses a process for producing derivatives of pyrrolidine which comprises reacting a 1,4–dihalo compound and a hydroxyalkyl amine such as ethanol amine.

The examiner rejected the claims as "lacking invention" over the French patent. Although the French patent does not disclose the specific 1,4–dihalo compound of appellant's process, he stated that no "invention can be seen in substituting a specific 1,4–dihalo entity in the process of the reference to obtain the expected result—cyclization to a pyrrolidine." The production of the 3–hydroxy–piperidines was not considered relevant, "since ascertaining the products of an obvious process is not a patentably inventive act." The board found no reversible error in the examiner's position.

Appellant contends that while it is true that the N–substituted prolinols can also be designated as pyrrolidines, the term "pyrrolidines" is a very broad and general one,[2] and argues that there are many pyrrolidines which are not prolinols. Appellant urges that the French patent makes no specific mention of any prolinol. Although appellant concedes that the French patent does involve in a general way the cyclization of the starting material to a pyrrolidine, it is contended that there is no apparent possible combination of reactants in the French patent which would inherently result in the production of N–substituted prolinols.

Appellant argues that his invention relates to a process for preparing N–substituted prolinols which can result in the concurrent production of isomeric N–substituted 3–hydroxy–piperidines. That phase of the invention which involves claiming the simultaneous production of both five-membered ring compounds (the N–substituted prolinols) and the six-membered ring compounds (the N–substituted–3–hydroxy–piperidines) is said to be exemplified by Example 11 of the application wherein N–methyl prolinol and N–methyl–3–hydroxy–piperidine are both produced by the same reaction and in approximately equal amounts. Appellant contends that the French patent has no teaching or suggestion as to the simultaneous production of a five-membered ring compound and a six-membered ring compound.

The issue here is whether it would have been obvious to one of ordinary skill in the relevant art, at the time the invention was made, to make the N–substituted prolinols with or without the concurrent production of the isomeric N–substituted–3–hydroxy–piperidines by a

2. Hackh's Chemical Dictionary (1944) shows that the compound, pyrrolidine, has the formula

$$CH_2—CH_2$$
$$|\qquad\ |$$
$$CH_2\quad CH_2$$
$$\diagdown N \diagup$$
$$|$$
$$H$$

method such as that shown in the French patent for producing derivatives of pyrrolidine.

 It is clear that the question whether there is anything patentable in applying or adapting a prior art process of producing a chemical substance to the production of other chemical substances is one which must be determined on the basis of the particular circumstances of the individual case involved. In re Mag-

at, 240 F.2d 351, 44 CCPA 735. Having considered all the circumstances, as here afforded us by the record and briefs, we see no error in the finding below of unpatentability as to claims 10 and 17 which do not specify the concurrent production of the isomeric N–substituted–3–hydroxy–piperidine.

The reaction in the French patent is stated to take place in accord with the following equation:

$$R.CH.CH_2X$$
$$|$$
$$R.CH.CH_2X \quad + \quad H_2NA \quad \longrightarrow \quad \begin{array}{c} R.CH\!-\!CH_2 \\ | \qquad\qquad \diagdown\!N.A \\ R.CH\!-\!CH_2 \diagup \end{array} \quad + \quad 2HX$$

In that equation R indicates "H, OH or other indifferent substituent," X a halogen such as chlorine, while A may be a hydroxyalkyl group such as the hydroxyethyl group. The reaction is said to be effected quite rapidly at ordinary temperatures and heating is said to be necessary occasionally. An excess of the amino compound is considered necessary and

a corresponding quantity of an alkali lye such as caustic potash lye may also be employed. It is stated in the French patent that in the above reaction between two bi-functional compounds there are obtained almost "exclusively" materials of the pyrrolidine series.

The reaction in appellant's process is stated to be as follows:

$$CH_2.CH_2.X$$
$$CH_2.CH.X \quad + \quad H_2NR^1 \quad \longrightarrow \quad \left[ \begin{array}{c} CH_2\!-\!CH_2 \\ | \qquad\qquad \diagdown\!N.R^1 \\ CH_2\!-\!CH \diagup \\ | \\ CH_2OR \end{array} \right] \quad + \quad 2HX$$
$$CH_2.OR$$

$$\downarrow H_2O$$

$$\begin{array}{c} CH_2\!-\!CH_2 \\ | \qquad\qquad \diagdown\!N.R^1 \\ CH_2\!-\!CH \diagup \\ | \\ CH_2OH \end{array} \quad + \quad ROH$$

wherein R is an acyl group, $R^1$ is an alkyl or hydroxyethyl group and X is a halogen such as chlorine. When no solvent is used in carrying out the reaction, appellant states that "it has been found preferable to use the primary alkylamine

in excess." Also appellant employs a sodium hydroxide solution in his examples.

Appellant's process is analogous to that of the French patent as is demonstrated by the facts that in both processes the

two halogens attached to the carbon atoms of the dihalo reactants become part of the halogen acid product, 2HX, and a pyrrolidine is formed. Moreover, in the process of the French patent, as in appellant's process, an excess of the amine reactant may be used as well as an additional quantity of inorganic alkali. We think those circumstances would make the production of appellant's N–substituted prolinols obvious to one of ordinary skill in the art when the specific 1,4–dihalo compound, viz. appellant's carboxylic acid ester, is employed in the process of the French patent. See In re Norman, LeSuer and Mastin, 309 F.2d 517, 50 CCPA 817.

█ However, we are unable to agree that the process in claim 12, which specifies the concurrent production of the isomeric piperidine, is obvious in view of the French patent. That phase of appellant's invention is said to be illustrated by his Example 11 wherein N–methyl prolinol and N–methyl–3–hydroxy–piperidine are both produced by the same process in approximately equal amounts. Example 11 is distinguishable from appellant's other examples in that the dihalo compound is added to the amine reactant cooled to $-5°$ C. That temperature is not specified in appellant's other examples where the amine is mixed with the dihalo compound at a temperature of 30° C. to 40° C. or at an unspecified temperature.

Such reaction conditions as recited in appellant's Example 11 are not found in the French patent nor are we convinced from the record that the conditions recited for the process in the French patent would inherently result in the production of the isomeric piperidine. There is certainly no further suggestion in the French patent of any "interaction" of the 1,4–dihalo reactant to produce a piperidine compound concurrently with the production of the pyrrolidine. On the contrary the French patent specifically indicates that in the reaction therein,

there are obtained almost "exclusively" materials of the pyrrolidine series.

For the foregoing reasons the decision of the board is affirmed as to claims 10 and 17 but reversed as to claim 12.

Modified.